UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JANET MCELHANEY, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 3:09-cv-1474 (CFD) |
| | : | |
| UNITED STATES CITIZENSHIP AND | : | |
| IMMIGRATION SERVICES; ERIC H. HOLDER, | : | |
| United States Attorney General; JANET | : | |
| NAPOLITANO, Secretary of the Department of | : | |
| Homeland Security; ALEJANDRO MAYORKAS, | : | |
| Director of the U.S. Citizenship and Immigration | : | |
| Services; M. FRANCES HOLMES, District | : | |
| Manager, District Two of the U.S. Citizenship and | : | |
| Immigration Services; and ETHAN ENZER, | : | |
| Filed Office Director, U.S. Citizenship and | : | |
| Immigration Services Hartford, Connecticut | : | |
| Field Office, | : | |
| Defendants. | : | |

## **RULING ON MOTIONS FOR SUMMARY JUDGMENT**

The plaintiff, Dr. Janet McElhaney ("McElhaney"), brought this action against the United States Citizenship and Immigration Services ("CIS"); Eric H. Holder, United States Attorney General; Janet Napolitano, Secretary of the Department of Homeland Security; Alejandro Mayorkas, CIS Director; M. Frances Holmes, CIS District Manager, District Two; and Ethan Enzer, CIS Connecticut Field Officer Director (collectively, "defendants"), alleging that the defendants improperly denied her application to become a naturalized citizen of the United States.[1] Specifically, McElhaney alleges that she satisfied the continuous residence requirement

---

[1] In plaintiff's Motion for Summary Judgment, McElhaney also sought review of CIS's decision to deny her application pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701–706 and 8 U.S.C. § 1441–1448. McElhaney has subsequently withdrawn that part of her motion.

in 8 U.S.C. § 1427(a). McElhaney moves for summary judgment. The defendants oppose summary judgment and cross-move for summary judgment. For the reasons that follow, the plaintiff's motion is denied and the defendants' motion is granted.

**I.     Factual Background**[2]

Dr. Janet McElhaney, a Canadian citizen and physician, came to the United States in 1998 pursuant to "TN" status—a non-immigrant status that Canadian citizens may obtain when working for a U.S. employer. Beginning in 1998, McElhaney worked at the Eastern Virginia Medical School and lived in Norforlk, Virginia. She lived with her daughter, Meaghan McElhaney, and then-partner, Marion Briggs.[3] McElhaney became a lawful permanent resident of the United States on February 22, 2002.

In 2003, McElhaney accepted a full-time position as an Associate Professor in the Department of Immunology at the University of Connecticut Health Center ("UConn"). McElhaney, Meaghan, and Briggs moved to Connecticut and purchased a house in Avon. Briggs, who also is a Canadian citizen, continued to work for East Virginia Medical School despite moving to Connecticut with McElhaney. In mid-2005, Briggs lost her job at East Virginia Medical School. The loss of employment in the United States caused Briggs' TN status to lapse and forced her to return to Canada.

---

[2] The following facts are taken from the parties' Local Rule 56(a) statements, summary judgment briefs, and other evidence submitted by the parties, including depositions. They are undisputed unless otherwise indicated.

[3] McElhaney was married to Meaghan's father, Ronald McElhaney, until their divorce in 2001. McElhaney subsequently married Briggs in Canada in 2005.

After Briggs returned to Canada, McElhaney began to explore employment options in Canada in April 2005. McElhaney accepted a full-time, tenured, faculty position at the University of British Columbia, in Vancouver, Canada. Following her acceptance of the position at the University of British Columbia, McElhaney reduced her employment at UConn from full-time to twenty percent, and, in July 2005, McElhaney and Briggs sold their Avon, Connecticut home. After selling their home, McElhaney and Meaghan moved into a room in a friend's house in Canton, Connecticut. McElhaney did not pay rent to the owners of the Canton home until July 2006, she has never signed a lease agreement, she does not pay any of the utility bills, and she does not own any of the furniture in the Canton home. In August 2005, Meaghan moved back to Canada to attend school.

In September 2005, McElhaney and Briggs married in Canada. As a result of her new job at the University of British Columbia—which began in October 2005—McElhaney and Briggs purchased a new home in Richmond, British Columbia, Canada. Both McElhaney and Briggs are listed on the title to the Canadian home and the home is furnished with the contents from the Avon house. McElhaney also canceled her health insurance provided by UConn, canceled her U.S. cell phone, obtained a primary care physician and dentist in Vancouver, Canada, obtained a Canadian drivers' license, transferred both of her cars from Connecticut to Canada, and maintains several bank accounts in Canada with Briggs.

In 2003 and 2004, McElhaney was only outside of the United States for a total of 17 days. However, beginning in 2005, McElhaney spent significantly less of her time in the United States—in 2005 McElhaney was outside of the United States 114 days; 291 days in 2006; 243 days in 2007; 304 days in 2008; and 282 days in 2009. From 2004–06, McElhaney filed federal

and state tax returns in which she listed her home address as Connecticut (either Avon or Canton). She reported earnings of $149,411 and $131,979 in 2004 and 2005, respectively. Beginning in 2006, McElhaney filed tax returns that listed her residence as Canada and her Connecticut earnings significantly dropped.[4] In addition, in 2006, 2007, and 2008, McElhaney filed for an extension of time to file her tax returns, each time citing that she resided or was domiciled outside of the United States.

On December 16, 2006, McElhaney filed an application for naturalization to become a United States citizen with the CIS. McElhaney attended an interview with a District Adjudications Officer[5] on September 25, 2007. At the interview, the officer informed McElhaney that her application was approved and scheduled her to receive her naturalization oath on October 19, 2007. Pursuant to CIS procedure, a reverification officer then reviewed McElhaney's application. During this review, an CIS Officer noted that McElhaney appeared to reside in Canada, rather than the United States. As a result, CIS canceled McElhaney's appearance at the oath ceremony and reopened her case for further examination. After further reviewing McElhaney's application, including additional evidence of McElhaney's residence that she submitted, CIS denied McElhaney's naturalization application on March 28, 2008. CIS determined that McElhaney did not reside in Connecticut during the required statutory period and that her residence, for purposes of immigration, was in Canada. McElhaney filed an administrative appeal pursuant to 8 U.S.C. § 1447(a) and attended a hearing on her appeal on

---

[4] McElhaney's Connecticut earnings represented less than $50,000 of her total $349,047 earnings in 2006; $17,541 out of $337,111 in 2007; and $16,698 out of $341,031 in 2008.

[5] A District Adjudications Officer is now known as an Immigration Services Officer.

December 16, 2008. After reviewing additional evidence, CIS issued a final decision on August 18, 2009, affirming its March 28, 2008 decision on the basis that McElhaney did not satisfy the United States' residency requirement for purposes of naturalization.

## II. Discussion

Under the Immigration and Nationality Act ("INA"), the Attorney General has the "sole authority to naturalize persons as citizens of the United States . . . ." 8 U.S.C. § 1421(a). However, judicial review of CIS's naturalization decisions is available in limited circumstances. According to 8 U.S.C. § 1421(c), this Court has the authority to review and decide *de novo* McElhaney's application for naturalization.[6] Summary judgment is appropriate in *de novo* proceedings pursuant to 8 U.S.C. § 1421(c). Chan v. Gantner, 464 F.3d 289, 295–96 (2d Cir. 2006). "It is well settled that the burden is on the alien applicant to show his eligibility for citizenship in every respect. I.N.S. v. Pangilinan, 486 U.S. 875, 886 (1988). "No alien has the slightest right to naturalization unless all statutory requirements are complied with . . ." U.S. v. Ginsberg, 243 U.S. 472, 475 (1917). This Court must strictly comply with all of the congressionally imposed prerequisites to the acquisition of citizenship. See Fedorenko v. U.S., 449 U.S. 490, 506 (1981).

---

[6] Section 1421(c) provides:

> A person whose application for naturalization under this subchapter is denied , after a hearing before an immigration officer under Section 1447(a) of this Title, may seek review of such denial before the United States district court . . . . Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law . . . .

To become a naturalized citizen in the United States, an applicant must satisfy the requirements set forth in the INA. See 8 U.S.C. 1427; 8 C.F.R. § 316. Specifically, 8 U.S.C. § 1427(a) sets forth the residency requirements for becoming a naturalized citizen:

> No person, except as otherwise provided in this subchapter, shall be naturalized unless such applicant, (1) immediately preceding the date of filing his application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years and during the five years immediately preceding the date of filing his application has been physically present therein for periods totaling at least half of that time, and who has resided within the State or within the district of the Service in the United States in which the applicant filed the application for at least three months, (2) has resided continuously within the United States from the date of the application up to the time of admission to citizenship, and (3) during all the periods referred to in this subsection has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

The question before this Court is whether McElhaney's move to Canada in October 2005 resulted in a change of her residence for purposes of her naturalization application. The INA defines "residence" as: "the place of general abode; the place general abode of a person means his principal, actual dwelling place in fact, without regard to intent." 8 U.S.C. § 1101(a)(33). "Residence" is further defined in the Code of Federal Regulations as the "alien's domicile, or principal actual dwelling place, without regard to the alien's intent." 8 C.F.R. § 316.5(a).

The facts overwhelmingly indicate that, beginning in the summer of 2005, McElhaney shifted her residence from Connecticut to Canada. When Briggs lost her job in the United States in 2005 and moved back to Canada, McElhaney subsequently sold their Avon, Connecticut home, transferred her cars and car registration from Connecticut to Canada, canceled her U.S. cell phone and obtained a Canadian cell phone, bought a house in Canada with Briggs, and

canceled her health insurance provided by UConn. Currently, McElhaney owns no real estate in the United States, does not have a registered automobile in the United States, and earns less than ten percent of her income in the United States. McElhaney's shift in residence from the United States to Canada is also evidenced by the fact that prior to 2005, McElhaney filed her state and federal income tax returns as a resident of Connecticut, but beginning in 2006, McElhaney has filed as a non-resident and lists her home address as Canada.[7] Finally, in her deposition, McElhaney even admitted that her principal place of residence is Canada and that she spends at least eighty percent of her time in Canada.

McElhaney claims that she satisfies the continuous residence requirement because, since moving to the United States, she has never been absent from the country for more than one year. McElhaney relies on C.F.R. Sections 316.5(b)(5) and 316(c)(1) for support of this claim. Sections 316.5(b)(5) states:

> (5) Residence during absences of less than one year.
>
> (I) An applicant's residence during any absence of less than one year shall continue to be the State or Service district where the applicant last resided at the time of the applicant's departure abroad.
> . . .

McElhaney contends that this exception applies to her because, despite moving to Canada in 2005, she returns to Connecticut periodically for her work at UConn and thus satisfies the continuous residence requirement based on Section 316.5(b)(5). Defendants do not dispute that McElhaney has not been absent from the United States for more than one year. Rather,

---

[7] While 8 C.F.R. § 316.5(c)(1) states that an applicant's U.S. tax status is not determinative, it is probative. See Chertoff, 490 F. Supp. 2d at 133.

defendants claim that McElhaney's reliance on Section 316.5(b)(5) is misplaced because her residence, for purposes of naturalization, is Canada—not Connecticut. This Court agrees with the defendants' position. Under 8 U.S.C. § 1427(a), the threshold issue is whether the naturalization applicant continuously resides in the United States prior to filing her application and during the pendency of her application. See Elgergawi v. Sec'y of Dep't of Homeland Sec., 170 Fed. App'x 231, 236 (3d Cir. 2006); Li v. Chertoff, 490 F. Supp. 2d 130, 132 (D. Mass. 2007); see also In re Bartkiw, 199 F. Supp. 762, 766 (E.D. Pa. 1961). To continuously reside in the United States necessarily requires an applicant to "reside" in the United States. As the Court found above, beginning in 2005, McElhaney no longer resided in the United States based on the definition of residence in the INA. Section 316.5(b)(5) is inapplicable, to individuals such as McElhaney, who do not retain their primary residence in the United States while abroad. Rather, Section 316.5(b)(5) applies to the naturalization applicant who is forced to travel abroad for an extended period of time but retains her primary residence in the United States. See Chertoff, 490 F. Supp. at 131–33 (finding that Section 316.5(b)(5) applied to a naturalization applicant who traveled to Canada to pursue a dental degree because she maintained her primary residence in the United States).

McElhaney argues, in the alternative, that 8 C.F.R. § 316.5(a) permits a person to have both a "residence" and a "domicile." McElhaney claims that her principal actual dwelling place is in Canada but that she is domiciled in Connecticut because she intends to return to Connecticut full-time at some point. Although the Second Circuit has not addressed this issue, the Third Circuit decided in 2006 that for purposes of naturalization, a person's domicile and residence must be the same place. See Elgergawi, 170 Fed. App'x at 234–35. In Elgergawi, the court

undertook an extensive analysis of the grammatical construction and statutory meaning of "residence" and "domicile" under Section 316.5(a).[8] See id. at 234–36. The court concluded that the phrase "or principal actual dwelling place" should be read as an apposition, not in the disjunctive. Id. at 235. Such an interpretation of 316.5(a) is consistent with the definition of residence set forth in 8 U.S.C. § 1101(a)(33), which states that "[t]he term 'residence' means the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent." Accordingly, for purposes of her naturalization application, McElhaney's intention to return to Connecticut is not controlling—McElhaney cannot reside in Connecticut (based on domicile), while maintaining her primary place of residence in Canada.

In sum, this Court finds that McElhaney's residence, for purposes of her naturalization application, is Canada. Therefore, McElhaney has not continuously resided in the United States as required by 8 U.S.C. §§ 1427(a)(1) and (a)(2) and is unable to rely on 8 C.F.R. § 316.5(b)(5). Accordingly, McElhaney's application to become a naturalized citizen of the United States must be denied.

---

[8] Section 316.5(a) states: "an alien's residence is the same as that alien's domicile, or principal actual dwelling place, without regard to the alien's intent."

### III. Conclusion

Accordingly, the plaintiff's motion for summary judgment [Dkt # 29] is DENIED and the defendants' motion for summary judgment [Dkt # 35] is GRANTED. The clerk is directed to close this case.

SO ORDERED this 20th day of October 2010, at Hartford, Connecticut.

/s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**